**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**KEVIN DOWELL**                                                                                       **PLAINTIFF**

**V.**                                **CASE NO.: 1:10CV00043 BD**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration**                                                               **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kevin Dowell brings this action for review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). For reasons that follow, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.[1]

**I.   Procedural History:**

Mr. Dowell filed his application for SSI on August 17, 2007. He alleged disability due to mental problems, anxiety, extreme temper, and high blood pressure. (Tr. 105) Mr. Dowell claims an onset date of December 1, 2001; however, SSI is not payable prior to the month following the month in which the application was filed. 20 C.F.R. § 416.335. (Tr. 9)

Mr. Dowell's claims were denied initially and upon reconsideration. (Tr. 43-44) At Mr. Dowell's request, an Administrative Law Judge ("ALJ") held a hearing on August

---

[1] The Honorable Gary R. Shelton, Administrative Law Judge.

20, 2009, at which Mr. Dowell appeared with his attorney. (Tr. 20-42) Mr. Dowell, a vocational expert and Mr. Dowell's mother all testified at the hearing. (Tr. 37-42)

The ALJ issued a decision on October 28, 2009, finding that Mr. Dowell was not disabled under the Act. (Tr. 9-19) On April 23, 2010, the Appeals Council denied a request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Mr. Dowell was twenty-nine years old at the time of the hearing. (Tr. 23) He had a tenth grade education. (Tr. 17, 24) He had past work as a construction worker and body piercer. (Tr. 40)

## II.    Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[2]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

---

[2] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. § 416.920(a)(4)(iv).

2

The ALJ found that Mr. Dowell had not engaged in substantial gainful activity since filing his application on August 17, 2007. (Tr. 11) He determined Mr. Dowell's passive-aggressive disorder, depressive disorder, major generalized anxiety, mood disorder, and personality disorder were severe impairments; but found Mr. Dowell did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 11-12)

The ALJ found that Mr. Dowell did not have any past relevant work because he had never performed work at substantial gainful activity levels. (Tr. 17) He concluded Mr. Dowell retained the residual functional capacity ("RFC") to perform unskilled work at the medium exertional level.[3] (Tr. 14-17) The ALJ found, based on the testimony of a vocational expert, that Mr. Dowell could perform jobs that existed in significant numbers in the economy, such as kitchen helpers and hand packers. The ALJ concluded that Mr. Dowell had not been disabled, as defined by the Act, since the date of his application. (Tr. 18)

III. **Analysis:**

    A.    *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence on the record as a whole to support the decision. *Johnson v.*

---

[3] Unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

*Astrue*, 627 F.3d 316, 319 (8th Cir. 2010); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

B.  *The Hypotheticals*

Mr. Dowell claims the findings of the ALJ are not supported by substantial evidence because the ALJ erred in finding at step five that Mr. Dowell could perform work in the national economy. Specifically, Mr. Dowell claims the ALJ's hypothetical was deficient because the only nonexertional limitation specified in the hypothetical was a restriction to "unskilled" work. Mr. Dowell claims the hypothetical should have described an individual who could only do work "where interpersonal contact is incidental to work performed" to account for what he claims is a more significant limitation on his ability to relate to others. (#11 at p. 10)

The ALJ determined Mr. Dowell had the RFC to perform a full range of work at the medium exertional level. (Tr. 14) Due to Mr. Dowell's nonexertional impairments, the ALJ found he was also limited to work "where interpersonal contact is incidental to

the work performed, *e.g.* assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct, and concrete (unskilled work)." (Tr. 14)

In the first hypothetical presented to the vocational expert ("VE"), the ALJ asked to VE to consider the following:

> a hypothetical individual who at his or her alleged onset date, a younger individual, with a limited education, and the past work identified for this record today. Now, because of a combination of impairments, limitations imposed, as a result of the combination of impairments. He performed work at the medium level of exertional activity that would be limited to unskilled entry level employment.

(Tr. 40-41) The VE testified that such a person could work as a "kitchen helper" or a "hand packer."

In a second hypothetical, the ALJ asked the VE about an individual the same age, with the same education and past work as Mr. Dowell who could perform medium physical activities but who, because of his mental nonexertional impairments, would have significant limitations in the ability to interact appropriately with coworkers, supervisors and the general public. The VE testified that there was not work available for such an individual.

Mr. Dowell argues that the hypothetical should have included a limitation to work where "interpersonal contact is incidental to the work performed" to conform with the ALJ's RFC finding. "A hypothetical question posed to the vocational expert is sufficient

if it sets forth impairments supported by substantial evidence in the record and accepted as true." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001).

Social Security Ruling 85-15 describes "unskilled work" as work which ordinarily involves dealing primarily with objects, rather than with data or people. Accordingly, the term "unskilled work" limitation incorporates a limit regarding interpersonal contact.

Mr. Dowell also claims that the opinions of Thomas M. Zurkowski, M.D., and Charles M. Spellmann, Ph.D., support his claim that the hypothetical did not include all of his impairments. He refers to letters from Dr. Zurkowski dated May 11, 2006, and July 13, 2009, where Dr. Zurkowski states that Mr. Dowell had "fair" immediate and recent memory; intermediate and remote memory; attention and concentration; and insight and judgment. (Tr. 270-71) Mr. Dowell does *not* highlight, however, the portions of both of Dr. Zurkowski's letters opining that Mr. Dowell's compliance with treatment should enable him to lead a functional life. (Tr. 270-71)

Further, Mr. Dowell relies on a Tenth Circuit case, *Cruse v. U.S. Dept. Of Health and Human Servs.*, 49 F.3d 614, 618 (10th Cir. 1995) to argue that the term "fair" has the same meaning as the listing requirement definition of the term "marked." *Id*. Mr. Dowell's reliance on *Cruse* is misplaced. In *Cruse*, the court was addressing the meaning of the term "fair" in the context of a mental assessment form which defined the term as meaning that the claimant's "ability to function in this area is seriously limited but not precluded." *Id*. at 618. That situation is not like this case where the word is being used in

a letter and has no specifically defined meaning.  See also *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000)(rejecting analysis in *Cruse* that the word "fair" is evidence of a disability).

Mr. Dowell alternatively argues the ALJ should have sought additional information from Dr. Zurkowski about what he meant by the term "fair."  An ALJ is not required to seek a clarifying statement from a treating physician unless a crucial issue is undeveloped.  See *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)(citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)).  In this case, there was not a crucial issue in the case that was undeveloped, and there is substantial evidence to support the ALJ's RFC assessment.

In addition to Dr. Zurkowski's opinion, the ALJ also considered the opinion of Dan Donahue, Ph.D., a state agency medical consultant who reviewed Mr. Dowell's claim.  State agency physicians' opinions are expert opinions, and an ALJ must consider these opinions, along with the other evidence of record.  20 C.F.R. § 416.927(f); SSR 96-6p.  The ALJ properly considered Dr. Donahue's assessment that Mr. Dowell had the functional capacity for unskilled work.  (Tr. 15, 263)

As additional support for his claim that the hypothetical did not adequately reflect his impairments, Mr. Dowell points to the report of Charles M. Spellmann, Ph.D., the consultant who examined Mr.Dowell for the Commissioner.  In his report, Dr. Spellmann

assigned Mr. Dowell a Global Assessment of Functioning (GAF) score of 35-45, which generally indicates a serious impairment in social or occupational functioning.[4]  (Tr. 242)

A GAF does not have a direct correlation to the severity requirements in mental disorders listings. 65 Fed.Reg. 50746, 50764-65 (2000).  DSM-IV is a classification of mental disorders that was developed for use in clinical, educational, and research settings. The diagnostic categories, criteria, and textual descriptions are meant to be employed by individuals with appropriate clinical training and experience in diagnosis.  It is important to appreciate that DSM-IV classifications are not meant to be applied mechanically by untrained individuals  Rather, specific diagnostic criteria included in DSM-IV are meant to serve as guidelines to augment clinical judgment and are not meant to be used in a cookbook fashion.  A single GAF score assessed by a consulting examiner, without more, is an insufficient basis for the ALJ to conclude Mr. Dowell had a more significant limitation in function so as to require additional restrictions in his hypothetical to the VE.

Further, Dr. Spellman doubted the validity of Mr. Dowell's complaints.  (Tr. 242-43)  As the ALJ noted, Dr. Spellmann's impression was that Mr. Dowell's account of his

---

[4]The Diagnostic and Statistical Manual of Mental Disorders (4th ed.) (DSM-IV), published by the American Psychiatric Association, states that a GAF of 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.  A GAF score of 41 to 50 generally indicates serious impairment in social, occupational, or school functioning.  (DSM-IV 32)

symptoms was "ripe with exaggerations."[5] (Tr. 12, 243) Dr. Spellmann questioned how a person with such extreme rage as Mr. Dowell described could have stayed out of trouble with law enforcement authorities over the years. (Tr. 243) Dr. Spellman stated, "[p]ossibly he is careful with his rageful outbursts so that consequences are minimal. This would indicate some ability to control himself." (Tr. 243)

Finally, Mr. Dowell points the Court to two letters from his family physician, Lackey G. Moody, M.D., dated July 24, 2009, and August 19, 2009. (Tr. 273-74) In both letters, Dr. Moody states that "[d]ue to the severity of his medical condition this patient is unable to be gainfully employed." (Tr. 273-74) In the letters, Dr. Moody concludes Mr. Dowell is totally and permanently disabled. (Tr. 273-74)

The ALJ appropriately gave these letters little weight. As the ALJ noted, a treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner, who is tasked with making that ultimate disability determination. *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007). Further, as the ALJ pointed out, Dr. Moody is a family physician, not a mental health specialist. (Tr. 15)

C.    *Jobs identified by the Vocational Expert*

Finally, even if the ALJ erred by not further restricting the hypothetical to include a limitation to jobs where interpersonal contact is incidental to work performed, the jobs

---

[5]The Court reviewed the entire record in this case, but did not rely on the anonymous letter sent to the ALJ. (Tr. 148)

identified by the vocational expert do not require Mr. Dowell to routinely come into contact with the public.

The VE found that Mr. Dowell could perform work as a kitchen helper and hand packer. The jobs of kitchen helper and hand packer are both classified as unskilled by the Dictionary of Occupational Titles ("DOT"). The descriptions for kitchen helper (DOT 318.687-010) and hand packer (DOT 920.587-018) both indicate the jobs, as they are ordinarily done, do not require the worker to spend significant time taking instructions from or helping others.

## IV.  Conclusion:

There is sufficient evidence in the record to support the Commissioner's determination that Kevin Dowell retained the residual functional capacity to perform work available in the national economy. Accordingly, Mr. Dowell's appeal is DENIED. The Clerk is directed to close the case.

IT IS SO ORDERED this 23rd day of June, 2011.

_____
UNITED STATES MAGISTRATE JUDGE